Lewis C. King, Respondent, *v.* John Townshend, Impleaded, etc., Appellant.

Equity may interfere to prevent a threatened cloud on title where there appears to be a determination to create such a cloud, and the danger is not merely speculative or potential.

In an action to compel the cancellation of a lease, executed and delivered by the comptroller of the city of New York, upon a sale of land for unpaid taxes, it was conceded that the lease was void because the sale included an illegal charge for interest; but it was claimed by defendant, the lessee, that the lease constituted no cloud on plaintiff's title, as it was ineffective to give a right of possession or establish a title, because no notice to redeem had been given the occupant or owner, and a comptroller's certificate obtained, as required by the statute (§§ 13–16, chap. 381, Laws of 1871), before the lease could be recorded. *Held*, that while, until the certificate was given, no title passed by the lease, and so, it might not constitute an actual cloud, yet it was a decisive step towards it, and a threat and menace to create one in the future, and as the invalidity of the lease did not appear upon its face, the court had jurisdiction to grant the relief sought.

Also *held*, that the fact the lessee had for many years omitted to give the notice was no answer, but, on the contrary, it only intensified the injury and danger.

*Clark* v. *Davenport* (95 N. Y. 478), distinguished.

In the plaintiff's chain of title was a deed to three persons, who were described as trustees of a land association. It did not appear that the association was incorporated, or capable as such of taking a legal title. *Held*, it was to be assumed that the association was a partnership of individuals, of which the grantees were members, holding the legal title for the benefit of themselves and others, and so they were not mere trustees, holding simply a nominal title, and the provisions of the Revised Statutes (1 R. S. 728, §§ 49–58), taking away such a title and vesting it in the beneficiary, did not apply; and, therefore, whether the deed was to be regarded as one to the grantees named individually, or as a conveyance for their benefit and that of others, they had authority to sell and convey a good title.

At the time of the conveyance to plaintiff defendant T., the lessee, was in possession. He showed no title upon which his possession rested, except the lease. *Held*, that his possession thereunder was not adverse to plaintiff's title, and so did not affect the validity of his deed.

In a prior action of ejectment brought by one then holding the record title against T., while he was in possession, a judgment was rendered in his favor. In that action the plaintiff proved no possession, either in himself or any of his grantees, and the defendant neither pleaded nor

proved a title, but relied on his possession.  *Held,* that the judgment was not conclusive against the title now held by plaintiff, as it did not establish a title in any one, and did not destroy or affect a title subsequently made perfect by possession.
Reported below, 65 Hun, 567.

(Argued February 9, 1894; decided February 27, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of June, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Townshend* for appellant. There was no cloud on the title. (Laws of 1871, chap. 381; *Smith* v. *Buhler,* 121 N. Y. 213; *Lockwood* v. *Gehlert,* 127 id. 244; *Bowns* v. *May,* 120 id. 362; *Purcell* v. *Elliott,* 6 Pet. 95; *Hyatt* v. *Seeley,* 11 N. Y. 58.) Plaintiff's suit was premature. (*Guest* v. *City of Brooklyn,* 69 N. Y. 512; *Clark* v. *Davenport,* 92 id. 483.) Plaintiff mistook his remedy. (*In re Willis,* 30 Hun, 13; Laws of 1871, chap. 381, § 15; Laws of 1882, chap. 410, § 951; *U. S. T. Co.* v. *Grant,* 137 N. Y. 12; *Stewart* v. *Chrysler,* 100 id. 378; *People* v. *Cady,* 99 id. 620; *Clark* v. *Mayor, etc.,* 111 id. 621; Code Civ. Pro. §§ 1525, 1638.) Plaintiff did not show any title. (*Moores* v. *Townshend,* 102 N. Y. 391; *Bates* v. *L. M. Co.,* 130 id. 204; Penal Code, §§ 129, 130.) The findings of fact and law in the case of *Moores* v. *Townshend* were in evidence; they estopped plaintiff from proving any fact contradictory of such findings. Without contradicting those findings plaintiff could not recover. The rejection of such findings was reversible error. It took from appellant his main defense. (*Smith* v. *Smith,* 79 N. Y. 634; *Beebe* v. *Elliott,* 4 Barb. 457; *Young* v. *Rummell,* 2 Hill, 480, 481; *Dunckle* v. *Wiles,* 6 Barb. 429; *Gardner* v. *Buckbee,* 3 Cow. 120; *Moore* v. *E. R. R. Co.,* 126 N. Y. 671; *C. C. P. & M. Co.* v. *Walker,* 114 id. 12;

*Dunham* v. *Bower*, 77 id. 80 ; *Smith* v. *Smith*, 79 id. 634 ; *Stannard* v. *Hubbell*, 123 id. 531 ; *Ashton* v. *Rochester*, 133 id. 197 ; *Bohn* v. *Hatch*, Id. 64 ; *Dawley* v. *Brown*, 79 id. 398 ; *Briggs* v. *Wells*, 12 Barb. 567 ; *Neftz* v. *Pitts*, 74 Penn. St. 343 ; *Barger* v. *Hobbs*, 67 Ill. 592 ; *Sherman* v. *Dilley*, 3 Nev. 21 ; *Masten* v. *Olcott*, 24 Hun, 587.) The judgment in *Moores* v. *Townshend* was conclusive as to the title litigated in that action. (Code Civ. Pro. §§ 1209, 1524, 1525 ; *Stowell* v. *Chamberlain*, 60 N. Y. 277 ; *Roberts* v. *Baumgarten*, 126 id. 339 ; *Wing* v. *De La Rionda*, 131 id. 431 ; *Unglish* v. *Marvin*, 128 id. 386 ; *C. Bank* v. *G. F. Church*, 127 id. 365 ; *Messenger* v. *F. N. Bank*, 6 Daly, 190 ; *Subariego* v. *Maverick*, 124 U. S. 297 ; *Tuska* v. *O'Brien*, 68 N. Y. 449 ; *Evans* v. *Millard*, 16 id. 619 ; *Lewis* v. *Pier Co.*, 125 id. 348.

*L. A. Gould* for respondent. The alleged lease in controversy is wholly void, and a court of equity will remove it as a cloud upon plaintiff's title. (*In re Willis*, 30 Hun, 13 ; *Thompson* v. *Burhans*, 61 N. Y. 65 ; *Ward* v. *Dewey*, 16 id. 522 ; *Crook* v. *Andrews*, 40 id. 549 ; *Scott* v. *Onderdonk*, 14 id. 15, 16.) The judgment of dismissal in the ejectment suit is not an estoppel as against respondent. (*Sweet* v. *Tuttle*, 14 N. Y. 465 ; *Rose* v. *Hawley*, 133 id. 315 ; *Russell* v. *Place*, 94 U. S. 606 ; *Bell* v. *Winfield*, 109 N. Y. 202 ; *Lewis* v. *O. N. Co.*, 125 id. 341 ; Bigelow on Estoppel, 61 ; *Cromwell* v. *Sac Co.*, 94 U. S. 351.) Plaintiff proved a complete record title and actual possession thereunder. (*Sinclair* v. *Jackson*, 8 Cow. 543.) The legal title was never vested in the New York City Land Association, No. 1. (*Tonar* v. *Hale*, 46 Barb. 361 ; *Bradstreet* v. *Clarke*, 12 Wend. 603 ; *Jackson* v. *Corey*, 8 Johns. 385.) The deed to plaintiff is not void for champerty. (*Dawley* v. *Brown*, 79 N. Y. 390 ; *Bedell* v. *Shaw*, 59 id. 49 ; *Bensel* v. *Gray*, 62 id. 623.)

Finch, J. The relief sought in this action is the cancellation of a lease executed and delivered by the comptroller of

the city of New York upon a sale for unpaid taxes. It is admitted by the defendant, who is the assignee of the lease, that it is void because the sale included an illegal charge for interest. It would seem that such an admission should at once end the controversy and the lease be promptly cancelled, but some ulterior purpose appears to lie behind the apparent litigation, and serves to prolong it. For, notwithstanding the defendant's concession, he resists the relief sought upon the double ground that there is no cloud on the one hand and no title to be clouded on the other.

The claim that the lease constitutes no cloud is founded upon the provisions of the statute which make the lease inchoate; ineffective to produce a right of possession or establish a title; until a specified notice to redeem has been given to occupant or owner, and a certificate of which, signed by the comptroller, must accompany the record of the lease. (Laws of 1871, ch. 381, §§ 13, 14, 15 and 16.) It is undoubtedly true that, until that certificate is given, the right of the lessee is imperfect and no title passes by the conveyance. (*Lockwood* v. *Gehlert*, 127 N. Y. 241.) But if we concede that the imperfect and inoperative lease does not constitute an actual cloud it is nevertheless a decisive step towards the creation of a cloud and a threat and menace to create one in the future. Equity may interfere to prevent a threatened cloud as well as to remove an existing one. (*Sanders* v. *Yonkers*, 63 N. Y. 492.) It is true that, in such a case, there must appear to be a determination to create a cloud, and the danger must be more than merely speculative or potential. That was said of tax proceedings in which no lease had been given and there was no proof that the purchaser claimed it or the city threatened it. Here it has been given. Its very existence is a threat. It was not given for amusement or as an idle ceremony. It meant and could only mean a purpose to subvert the title and possession of the owner. The further steps necessary to make the result effective lay wholly in the option of the lessee. If he actually served the necessary notice and filed the prescribed affidavit and satisfied the comp-

troller of those facts the certificate followed as a matter of course if not barred by a redemption. The lessee, therefore, in the present case stands with an effective weapon in his hands and may strike his blow when he pleases. It is in that respect that the situation differs from that in *Clark* v. *Davenport* (95 N. Y. 478). There the state comptroller had not given a deed and was not bound to give it. He might instead cancel the sale and could be compelled to do so. Here the city comptroller has given the lease and has no discretion left. If the grantee gives the notice and proves it, the comptroller must make the certificate. Nor is it an answer to say that for many years the lessee has omitted to give the notice. That only intensifies the injury and the danger. In *Hodges* v. *Griggs* (21 Verm. 280) a creditor's execution against land following an attachment had been allowed to sleep for seven or eight years, and equity required him to enforce his right or remove the threatened cloud. And so the defendant here has no right to maintain a threat of title as lessee, when he confesses that it is founded on no legal right. The lease is something more than a certificate of sale. It is in form and terms a conveyance, effective at the option of the lessee if there be no redemption. The statute provides that " all such leases executed by the said comptroller and witnessed by the clerk of arrears, shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessments on said lands and tenements for taxes or assessments, or Croton water rents, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular and according to the provisions of the statute." Such a lease, armed with such presumptions, effective at the option of the lessee, unless there is a redemption for his benefit drawing forty-two per cent of interest, and sufficient to prevent any sale of the property and cloud the owner's right, cannot be said to be a mere speculative danger.

Nor is it true that the invalidity of the lease appears upon its face. It shows no details of the amounts for which the sale was made, and the presumptions attending it make proof

of such details unessential to the right of the lessee. It is only by evidence outside of the lease itself that its invalidity can be made to appear.

I think, therefore, that enough was shown to justify the intervention of equity to cancel the lease even if considered only as a threat to create a cloud, and if the action be regarded as one not to remove but to prevent a cloud.

The further controversy appears to me to be quite extraordinary. It is over the purely legal question whether the plaintiff's title was or was not good and perfect, and the equity action became busy with the exact issue belonging to an action of ejectment. The plaintiff alleged that he was the owner of the land as he was bound to allege, and the defendant denied the allegation. If thereupon the plaintiff, as a condition of equitable relief, is compelled, not only to show possession which raises a presumption of title, but to go beyond that and disclose and defend the actual title under which he holds, with the burden of establishing it resting on him, and every weakness in it inuring to the adversary, and the final judgment conclusive on the question, he is stripped of every advantage due to his possession and which would be his in an action of ejectment. I incline to the opinion that this plaintiff was not bound to show or defend his paper title; that he might safely have rested upon his possession and the presumption of ownership which the law attaches to it, and was not required to subject his chain of title to the attack of his adversary. But I do not decide that question, or bind my own later judgment, because in this case no such objection appears; the paper title was disclosed and fought over and passed upon, without objection or protest; and so the question is presented whether it is good or not.

The plaintiff's chain of title was attacked, first, at the conveyance by Rollins to Mooney, Stansbury and Queripel, described as trustees of the New York City Land Association, but, nevertheless, running to them "as joint tenants, to the survivor of them, his heirs and assigns forever." It does not appear that the association was a corporate body or capable as

such of taking a legal title. It must be assumed to have been a partnership of individuals associated for dealing in real estate. Who they were we do not know, but we must presume that the three grantees were members of the association holding the legal title for the benefit of others as well as of themselves. They had, therefore, or may have had, a beneficial interest, and were not mere trustees holding the bare and naked legal title. The sections of the Revised Statutes which take away the nominal title and vest it in the beneficiary intended do not apply to a case where the grantee has himself a beneficial interest in the grant and is something more than the holder of the mere nominal title. (1 R. S. p. 728, §§ 49–58; *N. Y. Dry Dock Co.* v. *Stillman*, 30 N. Y. 194.) No case was made sufficient to divest the grantees of the legal title and vest it in an association which probably could not take at all; and whether we regard the deed as one to the individuals merely, discarding the reference to the association as matter of description (*Towar* v. *Hale*, 46 Barb. 361), or as conveying to some extent also for the benefit of others, the result is the same; for in the latter case there was undoubted authority to sell, entirely consistent with the possible or supposed trust, and in no respect a contravention of its purposes; so that the purchaser's title would be good, and not charged with responsibility for the due disposition of the proceeds.

Nor was the deed to plaintiff void because at its date Townshend was in possession and holding adversely. If he held under the comptroller's lease his possession was not adverse to plaintiff's title. (*Moores* v. *Townshend*, 22 J. & S. 249; *Bedell* v. *Shaw*, 59 N. Y. 46.) If he did not hold under that he failed to show any specific title upon which his possession rested. (*Dawley* v. *Brown*, 79 N. Y. 396.) He now asserts that he held under the judgment in ejectment rendered in *Moores* v. *Townshend*, but that judgment gave him no title, and adjudged none in him. He pleaded none and defended on his possession alone.

But he further relies upon the decision in that action as conclusive against the title now asserted by the plaintiff.

Judgment then went for the defendant and is described as upon the merits. It settled that Moores at that time and upon the then existing facts had no valid title, such as to defeat Townshend's possession. The judgment established no title in anybody, for the defendant neither pleaded nor proved one in himself, but stood, as he had a right to stand, on his possession. The certificate of the Superior Court shows that the plaintiff proved no possession either in himself or in any of his grantors, and he may have been defeated for that reason and that alone. But the present plaintiff has obtained possession and changed the situation. The previous adjudication that a title in the air was bad, does not destroy the title subsequently anchored to the possession. The conditions are different: the questions are not the same. The argument of the General Term shows, I think very fairly, that the judgment in ejectment is conclusive only as to the title established in that action, and that the judgment rendered did not establish any. The defendant pleaded none; the plaintiff proved none. If the court had decided in that case that the paper title disclosed was at any point defective or unsound, the decision would conclude us, but it does not so appear. The court may have held it to be good in and of itself provided only that there was possession somewhere under it. There is such possession now, and a decision on the present facts in favor of the plaintiff does not necessarily contradict the previous judgment against his grantor. At all events, the defendant was bound to show a decision adverse to and destructive of the title now asserted in some of its essential elements, but has not done so. In that respect we agree with the reasoning of the General Term.

It follows that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.